

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1846-11

### VICTOR MARTINEZ GARCIA, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### SAN PATRICIO COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., and PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., filed a concurring opinion in which KELLER, P.J., joined. JOHNSON, J., filed a concurring opinion. MEYERS, J., did not participate.

### O P I N I O N

The State's petition for discretionary review asks this Court to determine whether the

common-law requirement that the State exercise due diligence in prosecuting a motion to

revoke community supervision has survived codification of that matter. The court of appeals

ruled in favor of appellant, Victor Martinez Garcia, by applying the common-law due-

diligence requirement, which the State now argues has been superseded by statute. *See*

*Garcia v. State*, No. 13-10-00284-CR, 2011 Tex. App. LEXIS 5407, *8 (Tex. App.—Corpus Christi July 14, 2011) (not designated for publication). We conclude that the common-law requirement has been replaced by Texas Code of Criminal Procedure Article 42.12, § 24, which we refer to as the "due-diligence statute." *See* TEX. CODE CRIM. PROC. art. 42.12, § 24. Furthermore, the due-diligence statute applies to only two alleged community-supervision violations: "failure to report to a supervision officer as directed or to remain within a specified place." *Id*. Because the court of appeals analyzed the case under common law instead of under the statute, it erred. We reverse.

## I. Background

### A. Revocation Hearing

The State filed a motion to revoke appellant's community supervision, and a capias issued while he was still on community supervision. Two years after his community supervision expired, appellant was arrested on the capias and a hearing on the motion was held. At the hearing, appellant fell on his sword. He pled true to the violations alleged in the motion, stipulated to the evidence, and signed a judicial confession admitting the four violations alleged in the motion: (1) failure to complete required substance-abuse treatment; (2) withdrawal from the treatment facility without judicial release; (3) failure to return to the treatment facility from a pass; and (4) failure to timely report a change of address. Appellant did not object to the admission of this evidence, and the trial court found the allegations true.

In deciding appellant's sentence, the trial court considered the pre-sentence investigation report. The report indicated that, after the capias had issued but before it was executed, appellant had been arrested on an unrelated charge and incarcerated for two years. Defense counsel then argued, for the first time, that the case should be dismissed due to the State's delay in executing the capias. Counsel explained that he did not know why appellant was not allowed to respond to the State's revocation allegations while he was incarcerated on the unrelated charge, or why appellant was released from prison while the revocation capias was pending. Unpersuaded, the trial court revoked appellant's community supervision and sentenced him to seven years in prison.

## B. The Direct Appeal and State's Petition for Discretionary Review

The court of appeals reversed the trial court's judgment and remanded the case with directions to dismiss the motion to revoke. *See Garcia*, 2011 Tex. App. LEXIS 5407, at *8-9. It held that, because appellant raised due diligence at the revocation hearing, common law required the State to show that it had exercised due diligence in prosecuting its motion. *Id*. at *4 (citing *Brecheisen v. State*, 4 S.W.3d 761, 763 (Tex. Crim. App. 1999)). The court determined that defense counsel's closing arguments satisfied appellant's burden to raise the due-diligence defense and concluded that no evidence explained the State's failure to timely execute the capias. *Id*. at *6-7.

The State filed a motion for rehearing, which the court of appeals denied without opinion. *Garcia v. State*, No. 13-10-00284-CR, 2011 Tex. App. LEXIS 10280 (Tex.

App.—Corpus Christi Nov. 10, 2011) (not designated for publication). The State's motion and appellant's response agreed that the court of appeals erred by applying common law instead of the due-diligence statute. Appellant, however, claimed that he had met his evidentiary burden under that statute.

The State filed a petition for discretionary review raising six grounds, and we granted five, but reach only two: the third and fourth grounds for review. The State's third ground asks, "Has the affirmative defense provided for by article 42.12 section 24 of the Code of Criminal Procedure eliminated the common law due diligence defense?" We answer that question in the affirmative and, therefore, reach the State's fourth ground, which asks, "Is the failure to successfully complete residential treatment by withdrawing from the facility without written release from the trial court a 'failure . . . to remain in a specified place' under article 42.12 section 24?" In that ground, the State argues that, because appellant's community supervision was revoked for violations other than the two violations enumerated in the statute, the due-diligence defense was unavailable to him. We agree. Because we resolve its petition on these grounds, we do not reach the State's first, fifth, and sixth grounds

for review.[1]

## II. Analysis

### A. The Common-Law Due-Diligence Defense

At common law, a trial court's jurisdiction over a motion to revoke did not extend beyond the expiration of a defendant's community supervision unless the motion had been filed and a capias or arrest warrant issued within the supervision period. *Peacock v. State*, 77 S.W.3d 285, 287 (Tex. Crim. App. 2002). It was a defense to revocation that, in executing the capias or warrant and securing a hearing on its motion, the State had failed to exercise "due diligence," which required "reasonable investigative efforts . . . to apprehend the person sought." *Id*. at 287-88. The burden was on the defendant to raise the defense, but once he did so, the burden shifted to the State to prove due diligence by a preponderance of the evidence. *Id*. at 288; *Brecheisen*, 4 S.W.3d at 763. Neither the extension of the trial court's jurisdiction nor the due-diligence defense had a statutory basis. *Peacock*, 77 S.W.3d at 289; *see also Stover v. State*, 365 S.W.2d 808, 809 (Tex. Crim. App. 1963). This common-law scheme, however, was recognized by this Court and "followed by the various lower

---

[1] The State's grounds that we do not reach ask,

1. Does a plea of true to an allegation in a motion to revoke community supervision effectively waive any subsequently raised defenses to revocation?

5. Is the failure to report a change of address within two working days a "failure to report to a supervision officer as directed" under article 42.12 section 24?

6. Is a defense attorney's unsworn argument sufficient to satisfy his client's burden of proof under article 42.12 section 24 such that revocation was an abuse of discretion in this case?

courts for nearly forty years." *Peacock*, 77 S.W.3d at 289.

## B. Statutory Amendments Eliminated Common Law

We conclude that the 2003 statutory amendments to Texas Code of Criminal Procedure Article 42.12 replaced the common-law due-diligence scheme.

### 1. Applicable Law for Interpreting Statutes

When interpreting statutes, a court must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Toward that end, a court must focus its "attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of that text at the time of its enactment." *Id*. However, when application of a statute's plain language would lead to absurd consequences, or when "the language is not plain but rather ambiguous," a court may consider extra-textual factors such as legislative history of the statute. *Id*. at 785-86. In this context, ambiguity exists when a statute may be understood by reasonably well-informed persons in two or more different senses; conversely, a statute is unambiguous when it permits only one reasonable understanding. *Mahaffey v. State*, 364 S.W.3d 908, 913 (Tex. Crim. App. 2012).

### 2. Plain-Language Analysis of Due-Diligence Statute

In 2003, the Legislature amended Texas Code of Criminal Procedure Article 42.12 by adding Sections 21(e) and 24. *See* Act of May 30, 2003, 78th Leg., R.S., ch. 250, §§ 2, 3, effective June 18, 2003.  Section 21(e) expressly extends the trial court's jurisdiction over

revocation proceedings beyond the expiration of a defendant's community supervision so long as, before that time, the State has filed a motion to revoke, continue, or modify community supervision and a capias has issued.[2] *See* TEX. CODE CRIM. PROC. art. 42.12, § 21(e). That section, therefore, effectively codified the corresponding common-law requirement. *Compare id. with Peacock*, 77 S.W.3d at 287. It did not, however, codify the common-law due-diligence defense.

Instead, the Legislature added Section 24, which expressly created a due-diligence affirmative defense to revocation. TEX. CODE CRIM. PROC. art. 42.12, § 24. It states,

> For the purposes of a hearing under Section 5(b) or 21(b), it is an affirmative defense to revocation for an alleged failure to report to a supervision officer as directed or to remain within a specified place that a supervision officer, peace officer, or other officer with the power of arrest under a warrant issued by a judge for that alleged violation failed to contact or attempt to contact the defendant in person at the defendant's last known residence address or last known employment address, as reflected in the files of the department serving the county in which the order of community supervision was entered.

*Id*. This provision is more favorable to the State than was the common-law defense in three ways. First, it makes due diligence an affirmative defense, thereby shifting the burden of

---

[2]    Section 21(e) states,

> A court retains jurisdiction to hold a hearing under Subsection (b) and to revoke, continue, or modify community supervision, regardless of whether the period of community supervision imposed on the defendant has expired, if before the expiration the attorney representing the state files a motion to revoke, continue, or modify community supervision and a capias is issued for the arrest of the defendant.

TEX. CODE CRIM. PROC. art. 42.12, § 21(e). The Legislature also added Section 5(h), which expressly extends the trial court's jurisdiction over revocation proceedings beyond the expiration of deferred-adjudication community supervision. *Id.* § 5(h).

proof to the defendant. *Id*. Second, it limits the State's due-diligence duty to contacting or attempting to contact the defendant at his last-known residential or employment addresses, whereas common law required reasonable investigative efforts to apprehend the defendant. *Compare id. with Peacock*, 77 S.W.3d at 288. Third, it applies to only two revocation allegations: failure to report to an officer as directed, and failure to remain within a specified place. TEX. CODE CRIM. PROC. art. 42.12, § 24. By contrast, the common-law due-diligence requirement applied to all revocation allegations. *See Peacock*, 77 S.W.3d at 288.

It is plain that the Legislature intended to eliminate the common-law defense as to the two allegations listed in the due-diligence statute. *See* TEX. CODE CRIM. PROC. art. 42.12, § 24; *see also Pena v. State,* 201 S.W.3d 764, 765 (Tex. Crim. App. 2006) (holding that Section 24, not common law, "applie[d] to this case"). But it is, perhaps, less plain whether the Legislature intended to eliminate the common-law due-diligence defense entirely. One could reasonably argue that common law still applies to revocation allegations not listed in the statute. One could also reasonably argue, however, that common law has been entirely statutorily superseded and that the due-diligence statute is the only due-diligence law applicable to revocation proceedings. Because these provisions are subject to more than one reasonable interpretation, they are ambiguous and require extra-textual analysis. *See Boykin*, 818 S.W.2d at 785-86; *see also* TEX. GOV'T CODE § 311.023.

### 3. Extra-Textual Analysis

Examination of applicable extra-textual factors reveals that the Legislature intended

to wholly eliminate the common-law due-diligence defense by its passage of Sections 21(e) and 24. *See* TEX. CODE CRIM. PROC. art. 42.12, §§ 21(e) and 24.

### a. Legislative History and Policy Considerations

Less than a year after *Peacock*, in which this Court explained the long-standing, common-law due-diligence defense, legislators proposed the bill amending Article 42.12. *See Peacock*, 77 S.W.3d at 289 (noting that "the due diligence defense has no statutory basis," but is deeply rooted in common law); HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 1634, 78th Leg., R.S. (April 24, 2003). Supporters of the bill expressed concern regarding the burden that the common-law doctrine placed on the State to exercise due diligence and the resulting windfall to absconding defendants:

> Current law rewards offenders who abscond by imposing a duty on the state to exercise due diligence in apprehending a defendant who has violated the terms of community supervision. The state is penalized if it does not make continual efforts to locate and arrest the absconder, because either the trial court will deny the motion to revoke or the appellate court will overturn the revocation. [The bill] would ensure that a defendant is not rewarded for absconding and thereby escaping the court's jurisdiction.

*Id.* at 3 (citing *Stover*, 365 S.W.2d at 808). Supporters described the common-law requirement as "costly and burdensome" in light of limited law-enforcement resources. They also viewed the common-law requirements as posing a risk to public safety by preventing law enforcement "from bringing [absconders] to justice simply because the State does not have the resources to exercise due diligence." *Id*. An earlier-proposed version of the bill continued to impose a general but "simplified" due-diligence requirement on the State to "help counties

preserve their limited resources," but that version did not pass. *Id*.

Opponents of the legislation observed that entirely dispensing with the due-diligence requirement might result in defendants being called to answer for violations long after they were allegedly committed, making it more difficult to defend against those allegations. They observed:

> It would be unfair to drag a defendant to court 10 years after the defendant's probation expired if the defendant . . . mistakenly believed that he or she had completed probation successfully. With the passage of time, it becomes more difficult for a defendant to locate witnesses and other evidence to defend against a revocation.

HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS at 4, Tex. H.B. 1634, 78th Leg., R.S. (April 24, 2003).[3]

The legislative history reveals that the Legislature intended to replace the common-law requirement with the due-diligence statute to reallocate the burden of proof in those instances in which the State has timely alleged violations but has not arrested the defendant before the community-supervision period has expired. Furthermore, the history suggests that the legislation was intended to enhance the public's safety by permitting the government greater leeway to pursue those violators who have failed to comply with their conditions of community supervision.

In passing the due-diligence statute, the Legislature apparently rejected the policy

---

[3] We note that, because the State bears the burden of proof at revocation proceedings, it is arguably more disadvantaged by delay and, therefore, has a strong incentive to timely prosecute its motions to revoke.

arguments that favored the more expansive common-law due-diligence requirements, opting instead for the much more limited statutory due-diligence requirement. We may not override the Legislature's intent in favor of countervailing policy considerations. *See Boykin*, 818 S.W.2d at 785; *Martinez v. State*, 323 S.W.3d 493, 501 (Tex. Crim. App. 2010) (the Legislature, not the judiciary, "declares the public policy of the state").

### b. Post-Amendment Judicial Interpretation

The courts of appeals that have analyzed these provisions have construed them as wholly dispensing with the common-law defense, including the court of appeals in the present case. *See Pena v. State*, No. 13-03-648-CR, 2004 Tex. App. LEXIS 7689, *6 (Tex. App.—Corpus Christi Aug. 26, 2004) (not designated for publication), *reversed by* 201 S.W.3d 764. In *Pena v. State*, the court of appeals initially held that "the State failed to carry its burden to show it made a diligent effort to apprehend" Pena under the common-law due-diligence standard. *See Pena*, 2004 Tex. App. LEXIS 7689, at *7-8 (citing *Peacock*, 77 S.W.3d at 289). This Court reversed, holding that the newly added due-diligence statute applied to Pena's case. *Pena*, 201 S.W.3d at 765 (citing TEX. CODE CRIM. PROC. art. 42.12, § 24). On remand, the lower court concluded that the 2003 amendments to Article 42.12 eliminated any due-diligence defense as to allegations not enumerated in the due-diligence

statute. *Pena*, 2007 Tex. App. LEXIS 9006, at *4-6 (internal citations omitted).[4] Our interpretation of the 2003 amendments, therefore, is consistent with that of the courts of appeals that have analyzed the codification of the due-diligence defense.

In light of these extra-textual factors, we conclude that, by its 2003 amendments to Article 42.12, the Legislature eliminated the common-law due-diligence defense and replaced it with the limited affirmative defense provided in the due-diligence statute. *See* TEX. CODE CRIM. PROC. art. 42.12, § 24. The court of appeals, therefore, erred in analyzing this case under common law. We sustain the State's third issue.

### C. Due-Diligence Defense Does Not Apply to All Allegations In This Case

Having determined that the court of appeals erroneously analyzed the case under now-defunct common law, we must next decide whether remand is necessary. We conclude that it is not. As discussed, the due-diligence defense is limited to "failure to report to a supervision officer as directed or to remain within a specified place." TEX. CODE CRIM. PROC. art. 42.12, § 24. However, the trial court's revocation of appellant's community supervision was also based on a different violation, namely, failure to complete the required substance-abuse treatment. Therefore, even assuming that the State did not exercise due

---

[4] *See also Nurridin v. State*, 154 S.W.3d 920, 924 (Tex. App.—Dallas 2005, no pet.); *Wheat v. State*, 165 S.W.3d 802, 807 (Tex. App.—Texarkana 2005, pet. ref'd); *Horton v. State*, No. 10-09-00258-CR, 2010 Tex. App. LEXIS 3828, *5 (Tex. App.—Waco May 19, 2010, pet. ref'd) (not designated for publication); *Clark v. State*, No. 12-09-00394-CR, 2010 Tex. App. LEXIS 9125, *6 (Tex. App.—Tyler Nov. 17, 2010, no pet.) (not designated for publication); *Moss v. State*, No. 07-04-0330-CR, 2005 Tex. App. LEXIS 3590, *6-7 (Tex. App.—Amarillo May 11, 2005, no pet.) (not designated for publication).

diligence in executing the capias, the trial court did not abuse its discretion because no due-diligence defense is available with respect to failure to complete substance-abuse treatment, and proof of a single violation will support revocation. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. 1980) (one sufficient ground will support revocation order). We, therefore, sustain the State's fourth issue.

### III. Conclusion

The trial court did not abuse its discretion in revoking appellant's community supervision. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Delivered: December 12, 2012

Publish